May it please the Court, my name is Erin Ronstadt, and with Kevin Kelbel, we represent the appellant Beth Hallgren, personal representative for the late James Hallgren. I would like to reserve three minutes for rebuttal, and I'll watch my time in doing so this morning. AT&T terminated Mr. Hallgren's short-term disability benefits, leaving him with two seemingly hopeless options, return to work, which he could not medically do, or also be fired. In what the district court called an unfortunate circumstance, Mr. Hallgren conditionally resigned his employment under a mistaken belief, the belief that if he did not, if he could not return. We do know the circumstances of the case, so let me just, because your time is limited, let me cut to what I think is a key question. Thank you. Your client, or rather the, Mr. Hallgren may have had a claim under state law for unjust termination or, you know, something of that sort, or perhaps a contract claim under the contract, but why is this an ERISA claim? Yes, Your Honor, this is an ERISA claim because when he communicated his resignation, he was communicating about that conditional resignation to a fiduciary under an ERISA plan. He communicated to his supervisor, as I understood it. Is that right or wrong? That is correct, Your Honor. And why would his supervisor be an ERISA fiduciary? Your Honor, as we learned from Verity, an employer can be both a plan administrator and also function in an employer capacity. In the case of Ms. Ryder, she was doing far more than just providing information to Sedgwick. She was the one responsible for handling Mr. Hallgren's disability claim. She was the one who he was instructed to communicate on regarding the leave of absence. If you read, or in reading the conditional resignation e-mail to her, there's a lengthy conversation about FMLA. It was her responsibility. Okay, let me make sure I understand your answer to Judge Graber's question. So you're saying that she, Mr. Hallgren's supervisor, was a fiduciary, a plan fiduciary? Yes, Your Honor. And your argument hinges on that. If he's not a plan fiduciary, then your argument doesn't work. This argument, it may not be your entire case, but this particular line of argument all hinges on being a plan fiduciary. Yes. I'm not trying to trap you. I'm just really trying to clarify where we are. Sure, sure. And here's my concern. I may be reflecting Judge Graber's concern as well from what I understood the question is, but you can't have every supervisor, everybody in the company be a plan fiduciary. I mean, she had a full-time job being his boss and doing what bosses do, right? Was there anything about her job or her situation that made her a fiduciary of the plan? I mean, was she an administrator? Did she adjudicate claims? Did she do anything like that? Yes, Your Honor. She did, and I think where you see this very — I thought what she did is she communicated Mr. Hargan's job duties to the individual who made the assessment, and I think that was also a woman, right? I forget. Names, I'm terrible with names. But anyway, there was a different person, and she needed to know what Mr. Hargan did so she could make an assessment as to whether he could go back to work. So she asks the supervisor, and she says, well, you know, tell me about his job so I can make an assessment. Was there anything more than that that the supervisor did? Yes, yes. She did. She was the one responsible. It's more than she just made an assessment about his job. She provided what the essential duties were to Sedgwick. And there were several conversations about what that meant, and it was within the supervisor, Ms. Ryder's, power to actually reinstate benefits. And it was on her information — I'm sorry. She could reinstate benefits? The information that she provided to Sedgwick served as the basis for not only the first short-term disability denial, but also the short-term disability benefit reinstatement. But she didn't make the decision. She provided information of what he did. She didn't have authority. The supervisor didn't have authority to say you get benefits or you deny benefits, right? She didn't have that authority, right? That is — that is correct, Your Honor. But there was a separate claim administrator who made that decision, correct? Correct. A different person. Rosen — somebody. Rosenstein. Rosenstein. Rosenstein, right. So how is the supervisor different than the HR director? I mean, let's say the plan administrator says, look, I need to know how many hours he worked in the last year, and sort of checks with the HR director. Sure. There are lots of people in the company that can provide information, but don't you have to have some decision-making power under the plan in order to start being a fiduciary? Well, two points to address on that. She was effectively the HR leave person. Once again, she was the one who AT&T entrusted to deal with leave of absence issues, FMLA issues. She once again was the one defining his job. She was the one with the authority to even accept that resignation. So I think in terms of if she is not a fiduciary, then who is in this situation? All those claims administrators are. Rosenstein is, but he never had any direct communication with the claims administrator. There's a whole staff of claims administrators there, the fiduciaries. It's not as if you take the supervisor out of the mix, King's X, unless there's nobody in the company or nobody on behalf of the employer. And I guess I'm struggling with why this is an ERISA claim. It seems like a square peg in a round hole or vice versa, whatever that expression is. And because he resigned under a mistake of a mistaken understanding, but the mistake didn't appear to me to arise from a misstatement by a fiduciary within the meaning of ERISA, and that's my difficulty with your claim. But Ryder and Rosenstein, even if we put Ryder aside, although she is an agent of AT&T, AT&T is named in the plan as a plan fiduciary. But even if we put her aside, and we agree that Rosenstein was in fact a fiduciary, which the district court found, she knew the resignation would be harmful. This is a person who is charged with construing the terms of the plan, fundamental to a definition or to the definition of total disability. But what communication, if any, I thought there was no direct communication between Mr. Holgren and Rosenstein. Is that a mistaken understanding of the record? Your Honor, I may need you to clarify for me, because they did have several discussions. But as to the resignation, you are correct. As to the resignation, so whatever mistaken impression he had, it didn't come from Rosenstein. That's my recollection anyway. Is that right or wrong? I — Your Honor, that is incorrect, because the only two people handling this claim were Rosenstein. She was handling both the short-term and long-term. Right. But who — Working with Ryder. Okay. Who, if anyone, communicated to Mr. Holgren information that was mistaken that caused him to resign when, in your view, he would not otherwise have resigned? Who talked to him or wrote to him about that? That is the unfortunate circumstance, is that no one — no one did. But they knew that he believed that, and they said nothing. They did nothing. And so by remaining silent, which was beneficial for them, keep in mind AT&T is self-funding both the short-term and long-term disability benefits. So this is a pretty good gig if you — I'm just wondering what differences made that he resigned. Let's just sort of think about an alternative. Let's say he had gotten the news that he won't get short-term benefits. He'd been ordered back to work, and he said, I can't go back to work. And they said, in that case, you're fired. And they fired him for not coming back to work. And then he'd taken the appeal, and the benefits — the decision was reversed. The decision not to grant him benefits was reversed, and the benefits were reinstated. Would that change anything about his being fired? Yes, Your Honor. Because in that situation, if he had just been fired, then his employment would have been restored with that reinstatement of short-term benefits. It could have been restored, and AT&T seems to take the position that they would have restored him. But there was nothing about the decision on the ERISA plan that said he must be. All they were making a decision on, does he get benefits or does he not get benefits. And let's say AT&T had said at that point, well, too bad. You get your benefits. You are fired. You're still fired. Would he have had any ERISA claim there? He could have gone to state court and disputed it under contract or under employment law, but it wouldn't have been an ERISA claim, would it? Even if he had actually gotten fired because of this wrongful decision, this incorrect decision, right? Sure. And that — So the fact that he was given or somehow got incorrect information about what would happen or he misunderstood and they knew about it doesn't really make any difference, does it? It absolutely does make a difference, because that resignation prevented him from completing 52 weeks of short-term disability benefits. He had to be an employee to complete those benefits. But if they had fired him, he would still not have completed the 52 weeks, right? No, Your Honor. He would have, because once they — perhaps they would have terminated him, but when they reinstated short-term, his employment would have been short-term. Or, I'm sorry, his employment would have been reinstated. That's why I'm asking you. They could reinstate his benefits and say, look, we will give you money for the time you are out, but would that have automatically reinstated his employment? The reinstatement — Counsel is nodding, so I don't — I'm asking a general question. I don't know. I don't know the answer to it. I can certainly see a regime where the plan says, look, you're entitled to benefits, you get benefits. We're not an employer. We're a benefits plan, and your status as an employee is up to your employer. There's nothing about the reinstatement of benefits that would cause him to be reemployed, would it? But it would. That was the one reason that he wasn't able to complete disability benefits was because of the resignation. That was what was standing in the way from completing the 52 weeks of short-term disability benefits and then receiving long-term disability benefits. You've got two minutes left. Do you want to save it? Yes. Yes, Your Honor. Thank you so much. We'll hear from the appellees. Thank you. May it please the Court, Your Honor, Your Honors. My name is Stacy Campbell. I represent AT&T Umbrella Benefit Plan No. 1 and AT&T Services, Incorporated. I'm willing to take questions. I know you're familiar with the record. Why wasn't the wrongful denial of benefits a breach of fiduciary duty? I mean, it didn't seem to me as simply wrongful. It seemed almost egregious or grossly negligent, reckless, perhaps even malicious. He has a doctor who says he has surgery. So this is not somebody who's malingering or, you know, he actually goes under the knife. His doctor says he can't go back to work. And the plan says, oh, well, you know, we don't trust your doctor. We're going to send somebody else to look at you. And if I understand the record correctly, they send him to another doctor who also says he can't go back to work. And nevertheless, AT&T Benefit Plan, showing it has a heart, tells him go back to work or get fired. Now, why isn't that the kind of decision that itself, and causes all sorts of terrible consequences for him downstream, why isn't that kind of wrongful decision, which is eventually reversed on appeal, not even the appeals board can abide by it, why isn't that a breach of fiduciary duty that gives the district court authority to undo all the harm flowing from that decision? Your Honor, I'd first say that it wasn't a wrongful decision. I'm sorry? It was not a wrongful decision. It was reversed, right? It was reversed, but it was reversed based upon a new doctor looking at the information, coming up with additional requirements and restrictions. Was I wrong about what I said about the first two doctors? I'm sorry? Was I wrong in what I said about the first two doctors both saying, both his doctor and the independent doctor saying he can't go back to work? Am I wrong about that? His doctor was saying he couldn't go back to work, I believe, for a seven-month period that was supposed to end in January of 2007. And then AT&T had an independent medical examination done by Dr. Gregarious, I believe. I'm sorry? Dr. Gregarious was an independent medical examiner. I'm not. Dr. Gregarious evaluated Mr. Holgren and said, Mr. Holgren is depressed, and depression has created all of these things. But Dr. Gregarious wasn't a psychiatrist or a psychologist that would have been able to give that type of diagnosis. So AT&T, the benefit plan, extended Mr. Holgren's benefits, asked Dr. Gregarious to reevaluate what he had said, and he came back with restrictions. Those restrictions, the plan administrator took them, went to Mrs. Ryder and said, these are the restrictions. Can Mr. Holgren do his job within these restrictions? Mrs. Ryder said, yes, he can. We can modify some things. We can allow him to get up and walk around. We can do things that would allow him to do his job based upon those restrictions. That is what the plan administrator relied upon, is the restrictions by Dr. Gregarious and the AT&T supervisor saying, yes, within those restrictions, Mr. Holgren can do this job. That's what they relied on in making a determination that Mr. Holgren's cert-term disability benefits were not going to proceed. At that point, Mr. Holgren had a decision to make, go back to work. Let me ask you a more generic question. Can a denial of benefits ever be a breach of fiduciary duty? A denial of benefits under ERISA is the claim. That is the claim. It should not be, and ERISA would say that you have to, if you have a claim for denial of benefits and you make that claim, proceed under that claim. The breach of fiduciary duty is a separate claim, but you don't get necessarily to that claim when you've got a denial of benefits. Let me restate the question. Let me see if you can answer it. Can a denial of benefits ever be a breach of fiduciary duty? You know, I guess there could be situations where a denial of benefit could be a breach of fiduciary duty if a plan administrator was not following the terms of the plan. Okay. If that's the case, has there been an adjudication in this case whether or not that was or was not a breach of fiduciary duty? I'm sorry? Was there an adjudication in this case? Has the district court decided whether or not the breach, the denial here was a breach of fiduciary duty or not? You said it could be. I said it could be. You said it could be. And at that point, we're down to facts. Has the district court decided whether or not this denial of benefits in these circumstances is a breach of fiduciary duty? I don't believe that the district court has decided that there is a breach of fiduciary duty in this case. Did it decide whether it is or not? I think what the court decided is that there weren't facts that were present. I'm not asking you what it did decide. I'm asking you whether it decided the question of whether it's a breach of fiduciary duty. I know the court did many other things. I don't want to hear about the discovery rulings or anything else. I want to hear about my answer to that question. Did the district court decide whether or not this denial of benefits amounted to a breach of fiduciary duties? You said it could be, right? Was that something the district court decided here? I don't believe the district court decided it was a breach. Could we send it back for a decision on that issue? I don't think you should send it back. Well, the claim, I mean, there are two claims in the litigation. One is dealing with strictly the planned benefits. We want benefits that were wrongly denied. The other is for declaratory relief, declaring that the forced resignation was invalid because of the wrongful termination of benefits. And I guess I'm confused by the previous questions, because I think I thought that's the question that the district court answered starting on page, oh, gosh, I don't know what ER page this is, but starting on page 5 of the order. I thought that was the entire topic of the district court's decision as to whether that wrongful act, it isn't couched as breach of fiduciary duty precisely in the complaint, but that request for declaration was dealt with. So I'm confused about what was or was not decided in your view. And I want to make sure that I'm understanding the question. Well, I guess I thought the district court did decide whether there was a breach of fiduciary duty under ERISA. And in the answer to Judge Kaczynski, you seem to suggest that the district court hadn't decided that. Can I just take a minute to look at the order? It's always good when you ask about something to look at the thing. Starting at page 5 under the heading unilateral mistake and breach of ERISA fiduciary duty. Now, the district court may be right or wrong, but it seemed to me that the court directly addressed this question. That's why I asked you. Why would you talk about it? At pages 5 to 7 of the order, and there's a heading at the top, and then there's a discussion about whether the resignation was voluntary and who was ERISA fiduciary and so on and so forth. I believe what the district court, I guess my reading of the order is that the district court was saying that there was not, that plaintiffs had not pled facts that would support a breach of fiduciary duty claim. Right. That's a way of addressing the claim, though, right? Oh, it is. Okay. I thought what the district court was saying, this wasn't raised. See on page 5, lines 20 to 24? Correct. I think the district court says the breach of fiduciary duty claim was not raised. Well, but that's quite different from saying it decided it to say it wasn't decided because it wasn't raised. We can then talk about the question of whether it was raised and whether the district court should have decided it anyway. I just, I mean, you were there, right? Right. You should know what the district court did. That's why that's your here argument, right? It's my understanding, Your Honor, that the district court did not find that plaintiffs had raised facts to support a breach of fiduciary duty claim. I think first the court found that they had not raised, that they had not raised a breach of fiduciary duty claim in their complaint. And then spends another page saying, but even if they did, here's how I look at the facts. Correct. But even if they did, there's not factual support that would allow them to pursue on a breach of fiduciary duty claim. Okay. So how do we treat that? Do we treat that as not raised or do we treat it as adjudicated on the merits? I think from a summary. Let's try the adjudicated on the merits, because the district court did discuss it, right? I would believe, I would say it's. Why don't you explain to me why this was a matter that, as a matter of summary judgment, undisputed, this was not a breach of fiduciary duty? Because the district court did discuss it, right? The court did discuss it. So if we are reviewing this by the summary judgment standard, we then have to say no jury or no reasonable fact finder, if you're seeking equitable relief, could look at these facts, even if developed further on the record, by discovery, could find a breach of fiduciary duty here. And is that right? And I think that's what the court is saying. I think the district court is saying that there were no facts. Okay. If that's where we are, why don't you explain to me why that is undisputed by the case, why that is a matter of a summary judgment? To me, it sounds to me somewhat arbitrary, what you did, and, you know, the sort of whole course of events. And, you know, why do we agree that, in fact, no reasonable fact finder was able to find a breach of fiduciary duty here? So in a summary judgment motion, the evidence is viewed in the light most favorable to plaintiffs. And if there are no genuine issues of material fact, then the court is able to say, I can decide this issue. And I think that's what the court said here, is, yes, you raise plaintiff's claim that the supervisor was a fiduciary when the evidence in the case clearly shows that Cedric was the fiduciary. Cedric was the claim administrator. They were the ones to decide the benefits, to decide whether the benefits were going to be accepted or denied. And that's what happened here. Plaintiffs tried to say that Ms. Ritter was a fiduciary and she was a supervisor. It's not her job. She had no authority. Nobody granted her authority to be a claim administrator. I understand. I was just focusing on the actual decision to deny benefits. You said that that kind of decision can be a breach of fiduciary duty. You stood there about 10 minutes ago and you said it can be. So the question is, why is that on this record as a matter of law not a breach of fiduciary duty? I'm not talking about the supervisor's decision. I'm talking about the decision of the claims administrator. Because the claim administrator followed the terms of the plan based upon the information that was in the record in front of her and made decisions based upon that. There is no ñ she didn't breach any fiduciary duty to Mr. Hallgren or to anyone else. I have a question that is a completely different topic. Since Mr. Hallgren has passed away, obviously he can't be restored to his job. If the plaintiffs were to prevail, what would the remedy be? The plaintiffs have asked to restore Mr. Hallgren to his status quo. So basically, in addition to the short-term disability benefits that were restored, would there have been long-term disability benefits available had he not resigned his position? I don't think we can answer that question. Well, in theory. I'm just asking in theory. Well, I guess it would assume that if Mr. Hallgren had not resigned, he would have continued to work for AT&T or continue to be employed by AT&T and continue to have short-term disability benefits for the remainder of the 52 weeks. I think AT&T, by reinstating Mr. Hallgren's benefits based upon the new medical information, they have provided him with the remedy that was appropriate. Well, that's what I'm trying to figure out, whether there's a reason for us to be having all the intense discussions we've been having. What is the outside amount that he could ñ that his estate or his personal representative could obtain? You know, I don't know, Your Honor, what the amount there would look for to obtain, but it seems to me ñ What is at stake? Is it a pension? I mean, what are we talking about? Well, Mr. Hallgren is ñ Not a dollar amount, but what ñ I mean, you say you don't know the dollar amount. He's asking for ñ he's asking for this court to reinstate him to employment to assume that if he came back to employment, his employment would have ñ or he would have continued to remain on short-term disability for the period of the 52 weeks, and then he would have gotten short ñ or gotten long-term disability. So I guess what Mr. Hallgren is asking for is a period of short-term disability More disability benefits. And long-term disability for a period of time. How long would ñ so it's the remainder of the 52 weeks short-term, and then how much long-term? Well, I guess if the court would assume that Mr. Hallgren would have qualified for long-term disability, I would assume that they'd be asking for the period from when long-term would have kicked in until he passed away. Well, I figured that out. Well, I'm sorry. I'm not trying to ñ I'm not trying to ñ I'm asking how long. A number. Weeks, months. You don't know? I don't know. And it would be whatever the long-term disability benefits are. The long-term disability benefits are a function of his salary? They would be a function of salary, and we'd have to go back and look at the plan to see what those benefits would be. What percentage, yeah. So you don't have any idea what's at stake here in terms of the full amount? I don't, and I apologize. I've not thought of it in those terms. Okay. Thank you. We have a couple of minutes left. If you wouldn't mind starting with the questions I was asking opposing counsel, what is the remedy specifically that you're seeking since, obviously, he can't go back to work? Yes. Your Honor, we're essentially asking for five weeks of short-term disability benefits. So by rescinding that resignation or invalidating it in some way within this court's power, then Mr. Halgren could be restored to the status quo ante, complete those five weeks of short-term disability benefits, and then we're asking for this court to remand the long-term disability claim back to the district court so that we can finally make that proper eligibility determination. What's the length of time that that would have happened had it happened, the long-term disability? Approximately five years, Your Honor. A long time. Yeah. Long-term disability benefits were set to kick in April 30, 2007. ERISA is meant to protect plan participants, and when Mr. Halgren needed protection the most, AT&T remained silent. This is not meaningful communication. This is no communication at all. Amara has instructed us that ERISA does not set a particular standard for determining harm. The district court on page 5 says, Halgren's complaint does not allege that AT&T rose to the right of any other person breached ERISA fiduciary duties. And it cites, I think, the complaint at pages 3 to 10. Is that right? Your Honor, Mr. Halgren pled sufficient facts to support that legal theory, and he was not required to plead his legal theories. So what Mr. Halgren has asked for since day one has stayed the same. We have asked for exactly what was pled within the four corners of his complaint. And the breach of fiduciary duty issue matters because it allows this court to determine the proper pathway for fixing that conditional resignation. So the complaint does contain sufficient facts. Okay. Thank you. Thank you. Is there any chance of resolving this case by mediation? Mediation? We have very experienced mediators here in the court. Would you consider stopping by and visiting them? They never communicate with us, so we never find out anything they do with the parties. But it seems like a sad case in many ways. And perhaps the majesty of our courthouse will help. Why don't we defer submission of this case for a week? And if we hear from the mediators from the parties that you want us to continue deferring submission, we will do so and allow that process to continue. If we don't hear otherwise, we'll submit it in a week and, of course, decide it. You will find out from the clerk's office where the mediators are. They're somewhere in the building here. So before you leave, stop in and check in with one of our mediators. And I hope it resolves. It is a sad case. Thank you. So we'll defer submission of this case for one week. Thank you.
judges: Benson, Kozinski, Graber